IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


LIGIA C. PRUITT,
*formerly known as Ligia Southwick*,

   Plaintiff,

v.            Case No.  21-2345-JWB

THE LINCOLN NATIONAL LIFE
INSURANCE COMPANY,

   Defendant.


**MEMORANDUM AND ORDER**

 This matter is before the court on the parties' cross-motions for summary judgment. (Docs. 20, 22.)  The parties have each filed a memorandum, a response, and a reply, making the motions ripe for decision.  (Docs. 21, 23, 26, 27, 30, 31.)  For the reasons stated herein, Plaintiff's motion for summary judgment (Doc. 22) is DENIED and Defendant's motion for summary judgment (Doc. 20) is GRANTED.

**I.  Facts**

 The following facts are taken from a joint statement provided by the parties for purposes of summary judgment.

 Dr. Christopher L. Southwick (the "Insured") applied for life insurance with The Lincoln National Life Insurance Company ("Lincoln") in an application dated June 27, 2013 (the "Application").  The Application designated Plaintiff Ligia Pruitt—who was then the Insured's spouse and known as Ligia Southwick—as the primary beneficiary.  The Application designated

the Christopher L. Southwick Family Trust as the contingent beneficiary (the "Contingent Beneficiary").

Lincoln issued policy number T700058560 to the Insured with a policy date of July 9, 2013 (the "Policy"). Lincoln delivered the Policy to the Insured in Kansas. The Policy provided a death benefit of $1.5 million. A true and accurate duplicate copy of the Policy with portions of the Application redacted for privacy purposes is attached to ECF No. 15 as Exhibit A.

The Insured and Pruitt subsequently divorced and executed a marriage settlement agreement, dated April 25, 2018, which was entered on May 1, 2018 in the District Court of Johnson County, Kansas, Case No. 18cv00314 (the "Marriage Settlement Agreement"). A true and accurate copy of the Marriage Settlement Agreement is labeled Exhibit B, filed as ECF No. 19. Section V, C on pages 7 and 8 of the Marriage Settlement Agreement contained a mutual release provision which included the specific relinquishment by both the Insured and Pruitt of "any right to receive insurance proceeds as beneficiary or life insurance on the life of the other except as specifically provided otherwise in this Agreement":

> In consideration of the mutual releases contained in this paragraph, each of the parties hereby releases the other party and his or her respective legal representative, trustees, family members, heirs, successors and assigns, from any claim of any marital right, title or interest in or to any of the earnings, accumulations, future investments, retirement or profit sharing plans, money, assets or property of the other, any rights of inheritance in the estate of the other, except as otherwise provided in this Agreement, any rights to elect to take against the Will of the other, any rights to act as executor or administrator of the Will or estate of the other, any rights to receive allowance from the estate of the other or from any trust established to benefit the other, any additional right which either party has or may have by reason of their marriage, including dower or curtesy, whether by statute, agreement or common law, and each party hereby specifically relinquishes any right, title or interest through inheritance from the other or in the estate of the other, any right to receive insurance proceeds as beneficiary or life insurance on the life of the other except as specifically provided otherwise in this Agreement, and except those exceptions and provisions hereinbefore contained, it is specifically understood and agreed, however, that nothing herein contained in this paragraph shall be construed

as limiting the rights of enforcement of the terms and provisions of this Agreement by either party.

The Marriage Settlement Agreement did not elsewhere provide Pruitt or the Insured the right to receive insurance proceeds as a beneficiary of life insurance on the life of the other. Lincoln is not a party to the Marriage Settlement Agreement. Lincoln is not identified by name anywhere within the Marriage Settlement Agreement.  The Marriage Settlement Agreement does not expressly reference the Policy by name or by policy number T700058560.  After this divorce, the Insured did not redesignate Pruitt as a beneficiary under the Policy.

The Insured died on December 21, 2020.  After the death of the Insured, Pruitt demanded the death benefit under the Policy from Lincoln in January and February 2021 based on her prior designation by the Insured in the Application as the primary beneficiary. A true and accurate copy of the February 17, 2021 letter from Pruitt's attorneys (without the enclosures referenced therein) is attached to ECF No. 15 as Exhibit C. The letter represented on page 2 that the "Marriage Settlement Agreement allowed both Mrs. Pruitt and the Insured to retain their own life insurance policies, but did not revoke or otherwise modify their respective life insurance beneficiaries on those policies."  The letter did not mention the above-quoted mutual release contained in Section V, C of the Marriage Settlement Agreement.  The letter included a complete copy of the Marriage Settlement Agreement.

Lincoln denied Pruitt's claim for the death benefit under the Policy in a letter to Pruitt dated March 1, 2021.  A true and accurate copy of Lincoln's March 1, 2021 letter to Pruitt is attached to ECF No. 15 as Exhibit D.  The March 1, 2021 letter stated:

> After our review of the information provided, we determined that there are no benefits due to you for the following reason(s):
>
> The state of Kansas revokes the designation of a former spouse as beneficiary unless the policy was specifically awarded in the settlement agreement, the former

spouse was renamed as beneficiary after the divorce took place or the former spouse
is the policy owner.

Lincoln's March 1, 2021, denial letter did not reference or mention the mutual release contained
in Section V, C of the Marriage Settlement Agreement.  Lincoln's March 1, 2021 denial letter did
not expressly cite K.S.A. 59-105(b)(1)(A).

K.S.A. 59-105, entitled "Revocation of spousal inheritance rights upon divorce," provides
in part that "[o]n and after July 1, 2019, except as provided by the express terms of a governing
instrument, a court order or contract relating to the division of the marital estate made between the
divorced individuals before or after the marriage, divorce or annulment, the divorce or annulment
of a marriage: … Revokes any revocable … Disposition or appointment of property made by a
divorced individual to such individual's former spouse in a governing instrument…."  K.S.A. 59-
105(b)(1).  A governing instrument "means a document executed by the divorced individual before
the divorce or annulment of such individual's marriage to such individual's former spouse." K.S.A.
59-105(a)(4).  A "revocable" disposition "means one under which the divorced individual, at the
time of the divorce or annulment, was alone empowered, by law or under the governing instrument,
to cancel the designation in favor of such individual's former spouse…."  K.S.A. 59-105(a)(6).

Lincoln subsequently received in March 2021 a claim for the death benefit on behalf of the
Contingent Beneficiary.  A true and correct copy of the portions of the Contingent Beneficiary's
trust documents as provided to Lincoln in conjunction with the March 2021 claim is labeled
Exhibit E and filed under seal as ECF No. 18 (*see also* ECF No. 17, Order granting leave to file
under seal).  Lincoln paid the death benefit plus interest to the Contingent Beneficiary on April 6,
2021.  The trustee of the Contingent Beneficiary is Laura Lee Southwick, who is another former
spouse of the Insured.

Pruitt filed this lawsuit on June 30, 2021, and Lincoln filed its Answer on August 26, 2021. In its Answer, Lincoln asserted that Pruitt "relinquished, waived, and/or is barred and estopped from claiming, any beneficiary status under the policy at issue, by virtue of the April 25, 2018 Marriage Settlement Agreement, filed in Case No. 18 cv 00314 on May 1, 2018 with the District Court of Johnson County, Kansas," as provided in Section V, C.  (Doc. 8 at 4.)

## II.  Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. *Sotunde v. Safeway, Inc*., 716 F. App'x 758, 761 (10th Cir. 2017). The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. *Thom v. Bristol—Myers Squibb Co*., 353 F.3d 848, 851 (10th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). The nonmovant must then bring forth specific facts showing a genuine issue for trial. *Id*. The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

## III.  Analysis

### A.  Summary of Arguments

Plaintiff filed this action seeking a judgment declaring, among other things, that Plaintiff is the rightful beneficiary of the life insurance policy and is entitled to the full payment of the policy proceeds.  (Doc. 1-1 at 6.)

Defendant contends it is entitled to summary judgment pursuant to K.S.A. 59-105, arguing that the statute revoked the Insured's designation of Plaintiff, his former spouse, as the policy's primary beneficiary, leaving the Contingent Beneficiary as the proper recipient of the proceeds. Alternatively, Defendant contends Plaintiff specifically waived any claim as a beneficiary to life insurance proceeds in the Marriage Settlement Agreement between herself and the Insured, making the Contingent Beneficiary the rightful recipient of the proceeds.

For her part, Plaintiff points out that she and the Insured were divorced in 2018 and argues that KSA 59-105 only applies to divorces "on or after July 1, 2019." (Doc. 23 at 6.)  Plaintiff further argues Defendant's actions "are inherently contradictory and demonstrate unequivocally that the revocation-on-divorce statute does not preclude coverage," because Defendant paid the proceeds to another former spouse of the Insured (Southwick) as trustee for the Contingent Beneficiary, although KSA 59-105 states that it also revokes the nomination of a former spouse as trustee. (*Id.* at 5.)  As for the Marriage Settlement Agreement, Plaintiff argues Defendant is barred from raising this defense because Defendant waived the defense or failed to timely and properly assert it. (*Id.* at 9.)

### B.  Waiver and Estoppel

The court first finds that waiver and estoppel do not bar Defendant from asserting that the Marriage Settlement Agreement precludes Plaintiff's claim for the policy proceeds.  The parties agree that the substantive law of Kansas governs this question.  Kansas law recognizes that "[w]aiver occurs when a party affirmatively takes action that shows an intent to give up a right." *Becker v. The Bar Plan Mut. Ins. Co*., 308 Kan. 1307, 1315–16, 429 P.3d 212, 219 (2018) (quoting *Steckline Communications, Inc. v. Journal Broadcast Group of KS, Inc.*, 305 Kan. 761, 769, 388 P.3d 84 (2017)).  Plaintiff cites no action by Defendant that shows an intent to give up any right to

invoke the Marriage Settlement Agreement as a defense to payment.  Defendant's mere failure to mention the Agreement in its letter of March 1, 2021, does not reasonably show that it voluntarily and intentionally gave up a right to rely on it.  Defendant's March 1 letter was itself a response to Plaintiff's letter of February 17, 2021, in which Plaintiff represented that the Marriage Settlement Agreement "did not revoke or otherwise modify [the parties'] respective life insurance beneficiaries," and "the Marital Settlement Agreement [did not] even specifically mention" the Lincoln Policy.  (Doc. 1-1 at 10.)  In so doing, Plaintiff neglected to point out or mention the Settlement Agreement's provision that specifically addressed life insurance, which stated that "each party hereby specifically relinquishes … any right to receive insurance proceeds as beneficiary or life insurance on the life of the other."  Given the context, Defendant's failure to cite the Marriage Settlement Agreement in its responsive letter of March 1, 2021, is entirely consistent with a mistaken belief that the Settlement Agreement said nothing about Plaintiff's rights to claim life insurance proceeds as a beneficiary.  Under these circumstances, the March 1, 2021, letter does not reasonably support a claim that Defendant knowingly and voluntarily gave up any right to rely upon the Marriage Settlement Agreement.[1]  *See e.g., Patrons Mut. Ins. Ass'n v. Union Gas System, Inc.*, 250 Kan. 722, 725-26, 830 P.2d 35 (1992) ("Waiver must be manifested in some unequivocal manner by some distinct act or by inaction inconsistent with an intention to claim forfeiture of a right. Mere silence of a party is not waiver unless such silence is under circumstances requiring the party to speak.")

---

[1] Plaintiff rejects the suggestion that she "somehow misled [Defendant] … by including a cover letter that cited specific provisions … but not every provision of the Marriage Settlement Agreement" because the complete agreement was included with the cover letter, and she chides Defendant for "claiming it should not be held accountable because it chose not to read the agreement."  (Doc. 31 at 16.)  But whether Defendant was as diligent as it should have been under the circumstances is not the material issue here – the issue is whether Defendant's actions show that it intended to give up any right to invoke the Settlement Agreement.

As for the doctrine of estoppel under Kansas law, Plaintiff likewise fails to cite evidence to support use of that doctrine against Defendant.  Under Kansas law, the "party asserting equitable estoppel must show that (1) another party induced reliance on certain facts, (2) the party asserting estoppel reasonably relied upon those facts, and (3) that party was prejudiced by its reliance." *Id*. at 1316 (citing *Steckline*, 305 Kan. at 770 (quoting *Owen Lumber Co. v. Chartrand*, 283 Kan. 911, 157 P.3d 1109 (2007)).  An example of this in Kansas is the "reservation of rights" rule, which provides that "if a liability insurer, with knowledge of a ground of forfeiture or noncoverage under the policy, assumes and conducts the defense of an action brought against the insured, without disclaiming liability and giving notice of its reservation of rights," the insurer may be estopped from denying coverage if "the insured was prejudiced by the insurer's actions." *Id.* at 1314-15. In such circumstances, "where an insurer assumes the defense of an insured, [and] once reliance has been established, prejudice to the insured will be presumed." *Id.* at 1316.  But Plaintiff identifies no such prejudice from the fact that Defendant's March 1, 2021, letter did not cite the Marriage Settlement Agreement as grounds for not paying Plaintiff the life insurance benefit. Plaintiff cites no evidence of a change in position in reliance upon the letter, and no such prejudice is evident from the record.  Plaintiff concedes that Defendant asserted in its August 26, 2021, answer that Plaintiff was barred from recovery because she relinquished any right to life insurance proceeds as a beneficiary under the Marriage Settlement Agreement.  (Doc. 8 at 4-5.) On this record, that was a sufficient and timely manner of raising the defense.  Because Plaintiff has failed to show prejudice from Defendant's March 1, 2021, letter, the court concludes Kansas law does not prohibit Defendant from asserting that the Marriage Settlement Agreement operates to bar payment of the life insurance proceeds to Plaintiff.

Plaintiff cites *Mohr v. Women's Ben. Ass'n of the Maccabees*, 289 P. 476, 478 (Kan. 1930) for the proposition that "where denial of liability on a policy of insurance is predicated on one specific ground, all other possible grounds of nonliability of which the insurer was then aware are thereby waived, and the insurer cannot afterwards abandon the specific ground and defend one or more of the others." (Doc. 23 at 8-9.) But as the Kansas Supreme Court acknowledged in a prior appeal in *Mohr*, "the doctrine of waiver of defenses is similar to the election of remedies, and it *must have in some way inconvenienced or misled the insured* before it can be considered a waiver." *Mohr v. Woman's Benefit Ass'n of the Maccabees*, 127 Kan. 512, 274 P. 210, 212 (1929) (emphasis added.) *See also Guberman v. William Penn Life Ins. Co. of New York*, 146 A.D.2d 8, 12, 538 N.Y.S.2d 571, 573 (1989) ("The vast majority of jurisdictions recognize, however, that this rule of estoppel is limited in its application to those instances where the insured has suffered some degree of prejudice as a result of the insurer's attempt to shift its defense from one basis to another. This rule of estoppel 'has its limitations and exceptions, which are as clearly established as the rule itself, one of which is that before the rule can apply it must appear that claimant was misled to his injury.'") (citing cases, including *Mo*hr, 127 Kan. 512); *Fid. & Deposit Co. of Maryland v. Hartford Cas. Ins. Co*., 189 F. Supp. 2d 1212, 1222 (D. Kan. 2002) ("Federal courts applying Kansas law have held that an insurer will not be prevented from asserting additional exclusions in subsequent litigation over the policy's coverage, 'simply because it failed to mention each and every potentially applicable exclusion in its' denial letter.") Under Kansas law, Plaintiff's failure to cite evidence of prejudice from Defendant's conduct means Defendant is not estopped from raising the Marriage Settlement Agreement as a defense to payment.

## C. Marriage Settlement Agreement

It is uncontroverted that Plaintiff's Marriage Settlement Agreement with the Insured was executed in April 2018 and was entered in the District Court of Johnson County, Kansas, Case No. 18cv00314, on May 1, 2018.  Under Kansas law, a "property settlement agreement incorporated into a divorce decree functions both as a contract between the divorcing parties and an order of the district court."  *Matter of Marriage of Blosser*, 488 P.3d 1291 (Table), 2021 WL 2493205, *2 (Kan. Ct. App. 2021) (citing inter alia *Dozier v. Dozier*, 252 Kan. 1035, 1039, 850 P.2d 789 (1993)).  The court applies the rules of contract interpretation, under which it construes the contract "to give effect to the intent of the parties consistent with the plain meaning of the language used and considering the whole agreement." *Id.* (citing *Thoroughbred Assocs. v. Kansas City Royalty Co.*, 297 Kan. 1193, 1206, 308 P.3d 1238 (2013) and *Hefner v. Deutscher*, 58 Kan. App. 2d 58, Syl. ¶ 1, 464 P.3d 367 (2020).  "If the operative language is unambiguous, those words necessarily govern the rights and obligations of the contracting parties."  *Id.*

Kansas law provides that the "rights of a beneficiary to the proceeds of an insurance policy upon the life of a divorced spouse may be terminated by an agreement between the parties which may be reasonably construed as a relinquishment of the spouse's rights to the insurance." *Hollaway v. Selvidge*, 219 Kan. 345, 345, Syl. ¶ 3, 548 P.2d 835, 836 (1976).  Under the Marriage Settlement Agreement at issue, Plaintiff and the Insured each "specifically relinquishe[d] … any right to receive insurance proceeds as beneficiary or life insurance on the life of the other except as specifically provided otherwise in this Agreement…."  There was no provision to the contrary in the Agreement.  The only fair reading of this language is that Plaintiff, as part of an agreed-upon division of property in the divorce, gave up any right as beneficiary to receive life insurance proceeds on the Insured's life.  *Cf. Hollaway,* 219 Kan. 345, 350-51 ("We think a fair reading of it amounts to a relinquishment of appellant's inchoate rights or expectancies both to the insurance

proceeds and the KPERS benefits and the decedent's estate is therefore entitled to them.")  Based on that unambiguous language in the Marriage Settlement Agreement, the Contingent Beneficiary, rather than Plaintiff, was entitled to payment of the life insurance proceeds under the policy.

Plaintiff offers two additional arguments to avoid the above result, neither of which the court finds persuasive.  First, Plaintiff argues that *Hollaway* "was abrogated by *Cincinnati* [*The Cincinnati Life Ins. Co. v. Palmer*, 32 Kan. App. 2d 1060, 94 P.3d 729 (2004)] and *Ramsey* [*Ramsey v. McVey*, 98 P.3d 303 (Table), 2004 WL 2238776 (Kan. Ct. App. 2004)] and thus no longer is controlling precedent."  (Doc. 27 at 18.)  As an initial matter, Kansas Court of Appeals decisions cannot "abrogate" Kansas Supreme Court decisions.  Nor do these decisions compel a different result.  The panels in *Cincinnati* and *Ramsey* examined the impact of a 1996 statute requiring that divorce decrees "provide for any changes in beneficiary designation on … [a]ny insurance policy that is owned by the parties…."  *Cincinnati*, 32 Kan. App. 2d at 1064 (citing K.S.A. 60-1610(b)(1)).[2]  In *Cincinnati*, the district court ruled that a divorce decree stating only that each party "shall retain his or her own life insurance policies" was sufficient to show the insured's intent to remove his ex-wife as the designated beneficiary on his life insurance policy.  The *Cincinnati* panel reversed, stating that the *Hollaway* analysis, "which focuses on the intent of the parties as expressed in the settlement agreement … is no longer appropriate or necessary given the 1996 statutory revision," because the statute requires "any change in beneficiary … to be specified in the divorce decree, and absent such an express provision in the decree, an active beneficiary designation of either spouse at the time of the divorce is not changed."  *Id.* at 1064-65. Regardless of whether this fairly summarizes *Hollaway*, the ruling does not affect the outcome here, because Plaintiff's Marriage Settlement Agreement specifically provided for a change in

---

[2] Section 60-1610(b)(1) has since been recodified at K.S.A. 23-2802.

beneficiary designation: Plaintiff expressly relinquished any claim as a beneficiary on insurance policies covering the Insured's life.  That is an express, specified change in the beneficiary designation on an insurance policy covering the Insured's life.  *See Cincinnati*, 32 Kan. App. 2d at 1065 ("It is a simple matter to change a beneficiary on a policy after divorce, just as it is a simple matter to include an explicit waiver or relinquishment of the right of the beneficiary to take under the policy when the decree is drawn.  Absent unequivocal language or actions to support a finding of relinquishment or waiver by [the ex-wife], we decline to speculate as to what the parties may have intended.") (quoting *Redd v. Brooke*, 96 Nev. 9, 11, 604 P.2d 360 (1980)).  In *Ramsey*, the divorce decree was similarly vague, stating that the husband took certain accounts "free and clear of any interest of" the ex-wife, but not addressing any alteration in beneficiary status.  *Ramsey*, 2004 WL 1238776, *1.  The court found the ex-wife remained as the beneficiary on these accounts because the husband did not change the named beneficiary and the divorce decree "did not specifically state that [the ex-wife] would not receive any benefits under the policy in the property settlement agreement."  *Id.* at *6. Given the express language in the Marriage Settlement Agreement relinquishing Plaintiff's claim to be the beneficiary of any policies covering the Insured's life, *Cincinnati* and *Ramsey* are consistent with the result reached by the court.

Lastly, Plaintiff asserts that Defendant lacks standing to enforce the Marriage Settlement Agreement because Defendant was not a party to the agreement.  (Doc. 27 at 18) (citing *Shevling v. Shevling*, 278 Kan. 356, 97 P.3d 1036 (2004)).  As Defendant points out, this argument does not actually implicate standing in the jurisdictional sense; rather, it is based on principles of contract law.  *See Cornhusker Cas. Co. v. Skaj*, 786 F.3d 842, 851 (10th Cir. 2015) ("Although denominated a matter of standing, [Plaintiff's] argument is actually of another genus entirely—one that does not implicate a court's jurisdiction. Indeed, it presents no more than a garden-variety question

regarding the proper interpretation of the Policy.")  And the Plaintiff's argument is ultimately unpersuasive.  Unlike the plaintiff in *Shevling*, Defendant is not bringing an action seeking relief under the terms of a marriage settlement agreement.  It is performing its promise under the terms of an insurance contract that requires it to pay policy proceeds to the appropriate recipient – which in this instance is either Plaintiff or the Contingent Beneficiary.  Under Kansas law, Plaintiff could (and did) agree to terminate her rights as the beneficiary to the proceeds of the insurance policy and did so in a Marriage Settlement Agreement that "functions both as a contract between the divorcing parties and an order of the district court."  *Matter of Marriage of Blosser*, 2021 WL 2493205, *2.  Defendant does not seek to enforce that order; it has done no more than acknowledge the order and apply it to the terms of the life insurance policy.  Plaintiff has not shown that Defendant's actions were contrary to the terms of the insurance contract.  *Cf. Hollaway*, 219 Kan. 345, 350-51 ("We think a fair reading of it amounts to a relinquishment of appellant's inchoate rights or expectancies both to the insurance proceeds and the KPERS benefits and the decedent's estate is therefore entitled to them.")

In view of the court's determination that Defendant is entitled to summary judgment based on the express and clear terms of the Marriage Settlement Agreement, the court need not address the parties' additional arguments, including the dispute as to whether K.S.A. 59-105(b)(1) applies to a divorce occurring before July 1, 2019.  Regardless of whether the statute does or does not apply here, Defendant is entitled to summary judgment.

### IV. Conclusion

Plaintiff's motion for summary judgment (Doc. 22) is DENIED; Defendant's motion for summary judgment (Doc. 20) is GRANTED.  The court determines that Defendant's denial of Plaintiff's claim and its payment of life insurance proceeds to the Contingent Beneficiary was

consistent with the life insurance policy and with Kansas law.   The clerk is directed to enter

judgment accordingly.

     IT IS SO ORDERED this 1st day of July, 2022.


           s/ John Broomes

           JOHN W. BROOMES
           UNITED STATES DISTRICT JUDGE